Richardson, J.,
delivered the opinion of the court:
This case was transmitted to the court under the provisions of Revised Statutes, § 1063, by a letter of transmittal from the Secretary of War, of which the following is a copy:

“ The honorable the judges Court of Claims, Washington:

“ The undersigned, Secretary for the Department of War ot the United States, hereby respectfully represents that a claim has been made against said department by David H. Mitchell for grain furnished the government at Fort Harker, Kansas, in 1868, 1869. This claim involves disputed facts and controverted questions of law, and the amount in controversy exceeds three thousand ($3,000.00) dollars, and it is therefore deemed proper to transmit the claim, with all the vouchers, papers,proofs, and documents pertaining, thereto, to the Court of Claims, to be there proceeded in according to law.
“ Geo. W. McCrary,

“Secretary of War.

“ War Department, May 13,1878.”
On the 20th of June, 1879, in accordance with the established practice, as recognized by the court in Bright’s Case (6 C. Cls. R., *44 118), the claimant filed his petition alleging that the defendants were indebted to him in the sum of $13,004.79 as an unpaid balance due him for oats and corn delivered for the use of the Army on contract therein set out.
The principal controversy between the parties, both here and in the War Department, has been upon a question of fact as to the quantity of corn actually delivered to the defendants’ officers. The evidence is voluminous and unsatisfactory. As the burden of proof is upon the claimant, and he has failed to satisfy us of the correctness of many of the allegations contained in his petition-which are material tb his case, we have been obliged to find against him on the main facts in the controversy.
There is but a single question of law involved, and that arises upon these facts, concisely stated:
On the 9th of November, 1868, the claimant entered into a written contract with General Card, acting chief quartermaster of the Military Division of Missouri, under General Easton, acting chief quartermaster of the Military Department of Missouri, to furnish and deliver to the quartermaster at Fort Darker, Kansas, 16,000 bushels of oats, for which he was to be paid 87 cents for each and every bushel of 32 pounds delivered and accepted.
The contract expressly provided-that it should be subject to the approval of both the commanding general of the Division of Missouri and the commanding general of the Department of Missouri. It was so approved, and was also approved by General Easton, the'superior officer of General Card.
It was clearly the purpose of that provision to secure to the high commanding officers a supervision over the matter, and to control or prevent the making of such a contract on the part of an inferior officer, if they or either of them saw fit to do so. When thus made the contract could not be afterwards altered by any officer inferior to those whose approval had been necessary in the first place to give it validity. They were the officers who were acting for the United States in giving the consent of the defendants to the terms of the contract, and none below them in authority had a right to change the terms of their agreement.
. And yet the post quartermaster at Fort Darker, who was but a receiving officer to take such oats as the contractor had *45 agreed with his superior officers to deliver at that post, enteréd into an oral agreement with the claimant that he might deliver corn instead of oats, at the same price per bushel of 32 pounds as he was to be paid for oats.
Upon this oral agreement thus made the claimant relies as .establishing the price to which he was entitled for all the corn delivered. As we have shown, such an agreement could have no force or effect as an alteration of an existing contract made by higher authority. Nor was it valid as a new contract, even if the post quartermaster, Lieutenant Cooke, had authority to bind the United States by contract in such matters, because it was not made in conformity with the requirements of the statute.
The Revised Statutes, section 3744, provide:
“ It shall be the duty of the Secretary of War, of the Secretary of the Navy, and of the Secretary of the Interior to cause and require every contract made by them severally on behalf of the government, or by their officers under-them appointed to make such contracts, to be reduced to writing and signed by the contracting parties with their names at the end thereof.”
In the South Boston Iron Company’s Case (18 C. Cls. R., 165) we held that this provision requires a formal written contract in every case, to be signed by the parties at the end thereof, and that not even written correspondence containing proposals on the one side and acceptance on the other, separately signed by the respective parties, is sufficient to make a valid contract.
For the corn actually delivered to the defendants’ officers and used by them for the Army the claimant was entitled to payment at the fair and reasonable value of the article, upon an implied assumpsit, independently of any written contract. (Burchill’s Case, 4 C. Cls. R., 549; Heathfield’s Case, 8 id., 213; Solomon’s Case, 19 Wall., 17, and 9 C. Cls. R., 54.)
Having been SO' paid, he has no cause of action, and his petition must be dismissed.
Weldon, J., had, not taken his seat when this case was heard, and took no part in the decision.