HowRy, J.,
delivered the opinion of the court:
This is a motion by defendants to dismiss plaintiff’s petition on the grounds (1) that the corporation plaintiff never filed nor intended to file the petition, or petition of any kind, under and in accordance with the terms of the jurisdictional *499 act set forth in the margin; a (2) that the original contractor, the Globe Works, has never been and is not now represented by counsel; (3) that one Nathaniel McKay, the real claimant in the proceeding, died on July 10, 1902, and the cause has never been revived in the name of his executors; and (4) that a contract transferring the claim and the control of the proceedings was made by the nominal plaintiff to the said Nathaniel McKay, which contract is void as against the law and public policy, the interest of said decedent in the contract not being set out in the petition as required by law.
*500 In support of tbe motion certain exhibits, hereinafter described, are filed, from which it appears that the necessary legislation by which the court was authorized to hear the cause was procured by the aforesaid Nathaniel McKay, who filed the petition not as an attorney at law nor as an attorney professionally representing the nominal plaintiff, but was filed for said McKay’s own benefit and at his cost in accordance with a certain written contract made and entered into between the Globe Works and McKay, wherein and whereby it was agreed between them that said McKay should procure the necessary legislation, and when procured should prepare and file the necessary petition on the verification of the pretended plaintiff, and hire and pay the necessary attorney at law to appear in this court and conduct and control the action and its prosecution, and pay the necessary costs and expenses thereof, and then pay over to the Globe Works a certain per centum of any amount which might be recovered. Defendants charge that the contract for the purposes set forth is in writing and in possession of the Globe Works, and that it will show “ that there is no real party claimant herein to conduct, control, and prosecute the action, especially because it is in violation of section 3471 of the Devised Statutes.” Defendants also allege that the contract and proof of the consideration therefor will show that McKay was merely an industrious promoter who did not pretend to be a lawyer; that the claim set forth in the petition was never a legal demand upon the United States and never enforceable against the same, but that McKay conceived the idea that Congress would recognize the justice of the claim of the original contractor, as well as the claims of other persons who had suffered losses upon contracts with the Government for the construction, repair, and alteration of war vessels during the civil war, resulting from the increased price of labor and materials during the progress of work on such contracts. That McKay solicited and obtained from the Globe Works, and various persons and corporations having such claims, authority to obtain the necessary legislation and prosecute the claims before this court, and that McKay for large considerations and with assignments from *501 all the contractors (including the Globe Works) devoted his entire time and energies for a long term of years in efforts to secure at the hands of Congress the necessary legislation for the adjudication and payment of petitioner’s claim, with various others. Defendants charge that the contract is maintenance and champertous in form and meaning.
In the absence of the contract itself defendants rely upon the exhibits to their motion.
The Globe Works resists the motion on the ground that the evidence relied on does not show an assignment from plaintiff of record as original contractors, but that even if such evidence were on file the assignment to McKay does not exceed three-fifths. That by reason of section 3477 any assignment, except by operation of law, is null and void, and that section 1072 of the Revised Statutes, requiring assignments to be set forth in the petition, relates to assignments which actually prescribe ■ a legal or equitable interest and does not require the setting forth of assignments which on their face are null and void. That such evidence as defendants have filed shows that the Globe Works authorized McKay to employ counsel, under warrant of attorney, with power of substitution, and that the substitution was made by McKay, who employed John S. Blair to be attorney of record and to appear and prosecute the cause, all of which has been adopted and approved by the plaintiff; and inasmuch as the action has not been brought to enforce any agreement between McKay and the Globe Works the validity .or meaning of the agreement is not involved in the issues before the court.
Out of these general answers against the motion (presented by counsel employed by McKay for whatsoever interest he represents) the specific contention is made for the Globe Works that the extent or legality of the alleged assignment has nothing to do with the jurisdiction conferred upon the court by the special act. This presents a primary question of law to be disposed of before the issues of fact presented by the pleadings can be considered.
Additional importance is sought to be derived from the court’s action because it is alleged by the defendants that the case is one of a class of about thirty special acts confer *502 ring jurisdiction upon this court for amounts said to exceed $2,000,000; and of numerous other cases transmitted to the court for its action under the fourteenth section of the act of March 3, 1887, commonly known as the Tucker Act (24 Stats., 505), involving claims likewise against the United States for about $4,000,000.
It is charged that all of these claims are being prosecuted fraudulently and corruptly against the Government. Lest some right not yet presented be prejudiced, the court will state its views with strict reference to the present proceeding ; and because of defects in the proofs even as to this case, and the probable necessity to consider a more complete record, we will proceed with this only within the limits of a careful and conservative opinion only so far as the record will justify.
There may be a distinction between an unlawful agreement which forms a link in the chain of claimant’s title and one where it is collateral. In Peck v. Heurich (167 U. S., 624) it was held that by the common law prevailing in the District of Columbia an agreement by an attorney at law to prosecute at his own expense a suit to recover land in which he personally had and claimed no title, in consideration of receiving a certain proportion of what he might recover, was unlawful and void for champerty. But in Burnes v. Scott (117 U. S., 589) the question raised was not whether a champertous contract between counsel and client was void, but whether the making of such a contract could be set up in bar of a recovery on the cause of action to which the champertous contract related. The court, following the case of Boone v. Childs (10 Pet., 177), held that the right of the plaintiff was not forfeited by such an agreement and that it might be asserted irrespective of the invalidity of the champertous agreement.
But these cases involved neither a charge of an agreement for a contingent interest payable to an agent secretly holding an assignment for a part of a claim against the United States payable to such agent from an amount to be recovered for services to influence the passage of a legislative act (the agent agreeing to pay the expenses for securing the legisla *503 tion to enable this court to have jurisdiction to hear the cause) ; nor did these cases involve a charge of fraud in the prosecution of the claims. The case now under consideration inferentially charges both and with such strength and in such form the court is constrained to take notice.
Contracts for the payment of a proportion of an amount recovered in case of success and nothing in case of failure have been held to be lawful.
But contracts for a contingent compensation for obtaining legislation are void, as against public policy. (Marshall v. B. & O. R. R., 16 How., 336; Nutt v. Knut, 200 U. S., 22; Hazelton v. Sheckells, 202 U. S., 71.)
And the proposition is well established that every part of the consideration for a contract goes equally to the whole promise, and if any part of it be contrary to public policy the whole contract fails. It is immaterial whether anything improper be done or was expected by the assignor to be done. Such agreements are illegal and void because of the sinister influences which persons operating under such a contract may see fit to exert. In line with this statement there is express authority for further stating that, while compensation can be recovered on a contract for purely professional services when they- stand by themselves, yet when blended and confused with those forbidden, the whole contract is a unit and indivisible, and that which is bad destroys the good; but compensation can not be recovered for any part under a contract to take charge of a claim before Congress, where the services to be rendered amount to an agreement to procure legislation by personal solicitation on the part of the agent where the contract includes “lobby service.” (Trist v. Child, 21 Wall., 441.)
While a special jurisdictional act like that here is not a contract, but an ordinary piece of legislation prescribing the conditions upon which the Government has waived its privilege of sovereignty, Congress may put an end to it by the repeal of such an act whenever they may suppose that justice to the public requires it. (Beers v. Arkansas, 20 How., 529.)
But the court is not concerned with the power that Con- - gress have exercised in the passage of the act conferring *504 jurisdiction (or with what those bodies may hereafter do), except as the conduct of the parties under the act as it now exists has relation to the requirements of the law in the prosecution of the claim before this court under the provisions of section 1086 of the Eevised Statutes.
That section provides that—
“Any person who corruptly practices or attempts to practice any fraud against the United States in the proof, statement, establishment, or allowance of any claim, or of any part of any claim, against the United States shall ipso facto forfeit the same to the Government; and it shall be the duty of the Court of Claims, in such case, to find specifically that such fraud was practiced, or attempted to be practiced, and thereupon to give judgment that such claim is forfeited to the Government, and that the claimant be forever barred from prosecuting the same.”
The act conferring jurisdiction provides that within one year after the passage of the act under and in compliance with the rules and regulations of the Court of Claims the investigation shall proceed upon the basis therein designated. The rules of the court require that the petition must comply with the Eevised Statutes, section 1072, setting forth distinctly the amount for which the petitioner demands judgment. Every claim must set forth the title of the action, with the full Christian names and surnames of all the claimants.
Nevertheless, the Globe Works’ petition appears as sworn to by a person purporting to be its chief officer and shows on its face “ that no assignment or transfer of said claim, or any part thereof or interest therein, has been made except as stated in the petition; that it (the Globe Works alone) is justly entitled to the amount claimed from the United States — $172,530.11-—-after allowing all just credits and offsets.” This petition does not disclose the secret agreement whereby it is alleged that Nathaniel McKay acquired his interest.
If it be true, as contended by counsel, that section 1072 of the Eevised Statutes, requiring assignments to be set forth in the petition, relates only to assignments which actually *505 transfer a legal or equitable interest, then the contention also means that, though McKay solicited and obtained from the Globe Works its claim against the Government by an assignment of a three-fifths interest i'n consideration of McKay’s agreement to pay the expenses and procure the necessary legislation, the Globe Works can suppress the true nature of the transaction and is free to clandestinely carry out the agreement except for such accidental discovery as may be made of the character and extent of that agreement.
And if it be true that the extent of the alleged assignment has nothing to do with the jurisdiction, the contention also means that the action may be prosecuted contrary to public policy by interests not liable for costs under section 13 of the Tucker Act (nor otherwise responsible) and the court is powerless to declare any consequences.
We are of opinion that the extent and legality of this assignment is open to inquiry when the proper plea of fraud is filed by the United States in such form that issues, can be framed by those interested in the prosecution and defense of the demand.
The issues of fact are twofold — (1) as to any assignment at all by the Globe Works to McKay, and (2) as to the.petition being the act of the Globe Works.
The proofs consist of certain allegations contained in a bill in equity filed in the Supreme Court of the District of Columbia by Nathaniel McKay’s executors against John S. Blair (appearing here as attorney of record for the Globe Works), wherein the statement is made that the employment of McKay consisted of a power of attorney in writing, which included the unlawful agreements charged. A prima fade showing more in the nature of charges respecting these unlawful agreements for a three-fifths interest in many claims is thus made to appear. But the allegations of the bill in equity filed in another court by McKay’s executors against John S. Blair' can not be taken as proof of the matters which the bill tends to establish. McKay’s executors are not parties to this proceeding; nor is the Globe Works a party to the proceeding in the Supreme Court of the District of Columbia. Nor is Mr. Blair a party to the present motion, though *506 at the argument the admission appears to have been made by him, as the attorney of record, that his employment as such attorney came from a principal prosecuting the cause under • an alleged void assignment as shown by the proceedings in another court. The bill in equity against him elsewhere likewise appears to have been unanswered, which fact leads the court to the belief that the matters between the executor’s of McKay’s estate and Mr. Blair have been settled so that the cause of the Globe Works will continue to be prosecuted by the attorney of an agent now dead, but who, according to the allegations of the bill, contracted with the Globe Works to do an unlawful thing.
But with no jurisdiction as yet over the estate of Nathaniel McKay or of his legal representatives the court should not be embarrassed in the hearing in dealing with the alleged unlawful agreement and those claiming rights under it. Accordingly, notice is directed to issue to the executors of Nathaniel McKay to appear and make answer (if they claim an interest) to any plea of fraud which the United States may file and show cause why relief should not be granted as to them under a rule now to be entered for the hearing of the cause on the issue of fraud.
The power to bring in other parties alleged to be in interest has been repeatedly exercised by the court, beginning as far back as Bright v. Hutchins (6 C. Cls. R., 118).
When the issue of fraud is framed on defendants’ plea in the nature of a cross bill, persons demanding an interest in the claim are subject by statute to an examination on oath. Maintenance under a champertous agreement being charged, and an interest in the claim of from 40 to 60 per cent in payment of services for influencing the passage of the jurisdictional act, payable to a person other than the claimant of record, inferentially appearing in such form as to oblige the court to take notice, leave is extended to defendants to examine interested witnesses at discretion under the provisions of section 1080 of the Revised Statutes of the United States.
That section provides that:
“ The court may, at the instance of the attorney or solicitor appearing in behalf of the United States, make an order in *507 any case pending therein, directing any claimant in such case to appear, upon reasonable notice, before any commissioner of the court, and be examined on oath touching any or all matters pertaining to said claim. Such examination shall be reduced to writing by the said commissioner and be returned to and filed in the court, and may, at the discretion of the attorney or solicitor of the United States appearing in the case, be read and used as evidence on the trial thereof. And if any claimant, after such order is made, and due and reasonable notice thereof is given to him, fails to appear, or refuses to testify or answer fully as to all matters within his knowledge material to the issue, the court may, in its discretion, order that the said cause shall not be brought forward for trial until he shall have fully complied with the order of the court in the premises.”
While it is true that forfeitures in the law are not favored, nevertheless the Congress have provided for them, if in this court, there be an attempt by a claimant to practice any fraud against the Government in “ the proof, statement, establishment, or allowance of any claim or any part of any claim.”
The provision imposing the duty on the court to declare the forfeiture is one of the conditions which the lawmaking power has imposed in consenting for the Government to be sued and of which the citizen must be considered to have knowledge.
Section 1080 providing for the examination of an interested party “ on oath touching any or all matters pertaining to the claim ” in suit can not be so interpreted as to justify invasion of any claimant’s legal or constitutional rights. These rights and the decisions which declare them are too Avell understood to be recapitulated. The statute on its face recognizes the constitutional guaranties of the citizen to refuse to answer where by so doing he may expose himself to a criminal prosecution. Of course, the order of the court in permitting the examination of an interested party at the instance of the Government’s attorney or solicitor, can not go beyond the statute.
When it comes to the -taking of the testimony “ touching any or all matters pertaining to said claim,” the interested party may refuse to testify, if by testifying such witness exposes himself to prosecution.
*508 There is nothing in the provision of law providing for the examination of the interested party which relieves the Government from proving any alleged fraud. The burden on this kind of an issue rests with the party making it and continues there until, from all the proof before the court and the refusal of the party in interest to testify, the court may suspend the proceeding. In any event forfeiture can be decreed in no cause without proof satisfactory to the court that fraud or an attempt to commit fraud appears to have' been established.
The rule to be entered for the examination of interested parties will include all persons for examination as witnesses who upon the face of the record and by answer appear to have an interest in the claim. The claimant’s president, whose oath appears to the effect that no assignment of the claim had been made at the time of the verification of the petition, will first be examined. In the meantime the Globe Works be, and it is hereby, ordered to produce the original contract between it and Nathaniel McKay, or a true copy thereof, and file the same with the clerk of this court.
The motion of the defendants as presented is denied without prejudice and with' leave, by plea hereinbefore indicated, to present the matter in such form that the issues can be made for answer by the Globe Works and by the executors of Nathaniel McKay and all persons claiming an interest, followed by such other proof as defendants may elect to take independent of the examination of the parties in interest under the provisions of section 1080, supra, for the final action of the court.
If the allegations of the motion be true the court is prejudging nothing in saying that no part of any sum which may be recovered by the Globe Works can be paid for services rendered under an assignment prohibited by law. But the primary issue will be whether the proof sustains the allegations for contingent compensation to Nathaniel McKay under a contract to influence congressional action; and whether the proof sustains the further allegation of such an attempt on the part of the Globe Works (pursuant to the successful imposition upon Congress in the means used to *509 procure the special act) to practice fraud in the statement, establishment, or allowance of any part of the claim as shall entitle the defendants to a decree of forfeiture.

 “ That the claims for further compensation for the construction of the ironclad monitors * * * Suncooic * * * may be submitted severally by the contractors or their legal representatives, within one year after the passage of this act, to the Court of Claims, under and in compliance with the rules and regulations of said court; and said court shall have Jurisdiction to hear and determine and render judgment upon the same: Provided, however, That the investigations of said claims shall be made upon the following basis: The court shall ascertain and allow the additional cost which was necessarily incurred by the contractors for building the ironclad monitors * * * Suncooic * * * in the completion of the same, by reason of any changes or alterations in the plans and specifications required, and delays in the prosecution of the work: Provided further, That such additional cost in completing, and such changes or alterations in the plans and specifications required, and delays in the prosecution of the work were occasioned by the Government of the United States; but no allowance for any advance in the price of labor or material shall be considered unless such advance could not have been avoided by the exercise of ordinary prudence and diligence on the part of the contractors : And provided further, That the compensation fixed by the contractors and the Government for specific alterations in advance of such alterations shall be conclusive as to the compensation to be made therefor: Provided, That such alterations, when made, complied with the specifications of the same as furnished by the Government aforesaid : And provided further, That all moneys paid to said contractors by the Government over and above the original contract price for the building of said vessels shall be deducted from any amounts allowed by said court by reason of the matters hereinbefore stated: And provided further, That if any such changes caused less work and expense to the contractors than the original plans and specifications a corresponding deduction shall be made from the contract price, and the amount thereof shall be deducted from any allowance which may be made by said court to said claimants.” (32 Stats., pt. 1, p. 244.)